PAUL PICKARD, Agent of C. D. DEMERY, and C. D.
DEMERY, Appellants, v. HOMER FERRELL, Appellee.
—325 S. W. (2d) 288.

Western Section. February 25, 1959.

Certiorari denied by Supreme Court June 5, 1959.

462

Walker Gwinn, Memphis, for plaintiff in error.

John E. Proctor, Covington, for defendant in error.

BEJACH, J. We have before us for disposition on the present appeal two separate suits which were consolidated for trial in the lower court. The first suit was for replevin of a truck, instituted in the General Sessions Court of Tipton County by Paul Pickard, as agent of C. D. Demery, against Homer Ferrell and J. W. Turnage. After this suit had been appealed to the Circuit Court of Tipton County, it was amended to add C. D. Demery, along with Paul Pickard, agent, as a party plaintiff. The second suit was instituted by Homer Ferrell against Paul Pickard and C. D. Demery for the purpose of recovering the sum of $50 alleged to have been paid in error. Both suits were decided adversely to Homer Ferrell in the General Sessions Court, and were appealed by him to the Circuit Court where they were consolidated and tried to a jury with the Hon. Mark A. Walker, Circuit Judge presiding. The replevin suit was No. 331 and the suit to recover $50 was No. 373, in the Circuit Court. Inasmuch as Paul Pickard and C. D. Demery were plaintiffs in one suit, and defendants in the other, as was likewise true of Homer Ferrell, the respective parties will, for clarity, be called by their individual names.

The litigation here involved originated when Paul Pickard, as agent of C. D. Demery, instituted a replevin suit to obtain possession of a 1956 Dodge truck owned by

Homer Ferrell, which he had purchased from J. W. Turnage and for which he had executed a title retained note. It was the contention of Pickard, as agent, and of Demery himself when he became a party, that this title retained note had been transferred by Turnage, a used-car dealer, to Demery as part of the collateral securing a note evidencing an indebtedness from Turnage to Demery. It seems that Demery had had a nervous breakdown and had appointed Pickard, his son-in-law, as his agent to look after his business for him. In that capacity, Pickard went to see Ferrell and collected $50 which was credited on the note held by Demery. Later, Ferrell paid to Turnage the entire balance due on what he claims was the original and only genuine title retained note executed by him, and received that note from Turnage. It was and is the contention of Ferrell that the so called title retained note held by Demery is a forgery. It seems that Turnage, in connection with his used car business, had perpetrated a large number of forgeries, and Demery, himself, testified that Turnage has been convicted of forgery and is now serving a term in the penitentiary for that offense. The $50 payment to Pickard was made by Ferrell January 3, 1957, and the final payment to Turnage in the amount of $138.10 appears to have been made March 1, 1957. After making the payment to Turnage, Ferrell brought suit to recover the $50 which he had paid to Pickard.

At the conclusion of all of the evidence in the Circuit Court trial of the consolidated causes, counsel for Pickard and Demery made a motion for a directed verdict, "On the grounds that there is no material evidence on which the jury could base a verdict in favor of Mr. Ferrell and the only conclusion to be drawn from the

464

whole evidence, including the title certificate, is that the original plaintiffs are entitled to possession of the truck." This motion was overruled by the trial judge, and after he had charged the jury, the consolidated causes were submitted to the jury, which returned a verdict in both cases in favor of Ferrell and against Pickard and Demery.

Thereafter, on April 17, 1958, counsel for Paul Pickard and C. D. Demery filed a motion, which motion, including the caption of same, is copied herein in full, as follows:

"Motion for New Trial and for Judgment Non Obstante Veredicto

"Come the original plaintiffs and cross-defendants, Paul Pickard and C. D. Demery, and move the Court to set aside the verdict in this cause, grant a new trial and enter judgment in favor of said original plaintiffs and cross-defendants, for the following reasons:

"(1) There is no material evidence to support the verdict.

"(2) The Verdict is contrary to the evidence.

"(3) The evidence preponderates against the verdict.

"(4) The Court erred in overruling said original plaintiffs and cross-defendants Motion for peremptory instructions made at the conclusion of all the evidence in this cause.

"Wherefore, said original plaintiffs and cross-defendants move the Court to set aside the verdict

awarded in the trial of this cause and enter judgment in this favor.

"(S)  Walker Gwinn

"Walker Gwinn, Atty. for original plaintiffs and cross-defendants

"I, Walker Gwinn, hereby certify that I have mailed a copy of this motion to Mr. John Proctor, Attorney at law, this 16th day of April, 1958.

"(S)  Walker Gwinn"

After said motion had been overruled by the trial judge, C. D. Demery and Paul Pickard excepted, prayed, and have perfected their appeal in the nature of a writ of error to this Court. Here, they have filed only one assignment of error which is as follows:

"The trial court erred in not granting appellants motion for a directed verdict made at the conclusion of all the proof; and the trial court erred in overruling appellants motion for a new trial.

"This was error because there was no evidence to support the verdict."

■ This assignment of error requires us to examine the evidence, but our examination and review of the evidence, since the judgment in this case was based on a jury verdict, is not to determine where the truth lies nor to find the facts of the case, but must be limited to a determination of whether or not there was any material evidence to support the verdict. Cherry v. Sampson, 34 Tenn. App. 29, 232 S. W. (2d) 610; City Water Co. v. Butler, 36 Tenn. App. 55, 251 S. W. (2d) 433; Central Truckaway System v. Waltner, 36 Tenn. App. 202, 253

S. W. (2d) 985; Monday v. Millsaps, 37 Tenn. App. 371, 264 S. W. (2d) 6; East Tennessee Natural Gas Co. v. Peltz, 38 Tenn. App. 100, 270 S. W. (2d) 591; Nashville, Chattanooga & St. Louis Ry. v. Crawford, 39 Tenn. App. 37, 281 S. W. (2d) 69; Johnston v. Cincinnati N. O. & T. P. R. Co., 146 Tenn. 135, 149, 240 S. W. 429; Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S. W. (2d) 564, 570. In this connection, it is elementary that appellate courts may not consider or weigh the evidence or determine where the preponderance lies. Fairbanks, Morse & Co. v. Gambill, 142 Tenn. 633, 222 S. W. 5; Smith v. Tate, 143 Tenn. 268, 227 S. W. 1026; Cincinnati N. O. & T. P. R. Co. v. Denton, 24 Tenn. App. 81, 140 S. W. (2d) 796; Dorrity v. Mann, 43 Tenn. App. 554, 310 S. W. (2d) 191, 194. A number of witnesses testified on both sides of this litigation; but, in view of the above stated principles of law, it will be necessary for us to summarize only the testimony which entitled the appellee Homer Ferrell, to have his contentions submitted to the jury, supplemented by additional reference to such of the testimony offered on behalf of appellants, Paul Pickard and C. D. Demery, as may be necessary to present their contentions. Such contentions of appellants were, however, foreclosed by the jury's verdict.

Homer Ferrell testified that it was his genuine signature on the note on which he had made the final payment to J. W. Turnage March 1, 1957. This note, in the amount of $1,398.10, dated January 17, 1956, and a photostatic copy of a note of J. W. Turnage to Mrs. C. D. Demery in the amount of $2,747.00, marked "paid", which he said Turnage had delivered to him at the time of making the final payment on his own note, were offered in evidence. He also offered in evidence receipts for

payments made on the note for $1,398.10 which totalled that amount. The title retained note in the amount of $1,398.10 showed that it was secured by a 1956 Dodge truck, motor number VT 33422256. He testified that he went through the third grade in school, that he could with difficulty write his name, that he was nearly blind, that the note held by Demery is a forgery, that on the night of January 3, 1957, when Paul Pickard called on him, no note was shown to him by Pickard, but that he did show to Pickard the receipts which he held. He said that he took Pickard's word for having the note and that, at that time, he was somewhat intoxicated, having had, as he expressed it, a little of this "Mississippi River Dew". He denied having told Pickard to replevy the truck.

Mrs. Homer Ferrell testified that she was present when her husband paid Paul Pickard $50, and that she saw no note, but did see receipts, and that her husband was drinking at that time. When presented with the note held by Demery, she said she thought the signature on it was the same as the one on the note which he had paid to Turnage. In the course of her testimony, however, she pointed to the printed or typed name of Homer Ferrell as being his signature.

C. D. Demery testified that J. W. Turnage, who was in the used car business during 1956, has been convicted of forgery. He said that he and Turnage had been good friends, and that he did a tremendous business with Turnage, lending him money on numerous occasions. He said he had Turnage's note for $43,850, and that on December 15, 1956, Turnage transferred and assigned to him a title retained note, allegedly executed by Homer Ferrell, on a 1956 Dodge truck, motor numer 84270139,

which note was to be paid at $50 per month and showed payments regularly made up to that date. The motor number on the truck replevied matched the motor number referred to in this note, and corresponded with the motor number on the truck replevied and with the numbers shown in the title certificate.

On cross examination, Demery testified that the Homer Ferrell truck note was put up as collateral on a $2,747 demand note dated October 19, 1956 due Mrs. Demery which was subsequently paid by a collateral note or collateral notes. He also said, with reference to the Homer Ferrell truck note, "That could be Turnage got it back and that he could have transferred it to me again, which did happen on a lot of occasions. He will get those notes back and transfer them back to me."

Paul Pickard, son-in-law of C. D. Demery, testified that Homer Ferrell admitted that the $1,369.10 note held by C. D. Demery was signed by him. He said that when Mr. Demery suffered a nervous breakdown at Christmas, 1956, he was not able to handle his business and therefore turned same over to him (Pickard), asking him to collect various notes assigned by Turnage, and that, as a large number of the notes assigned were forgeries, he was also to determine which were forgeries and try to obtain the good notes. He said that pursuant to this authority, on January 3, 1957, he, accompanied by a Mr. Joyner, went to Mr. Ferrell's house, where he showed Mr. Ferrell the note and a title certificate and asked Mr. Ferrell if it was his note and title and if the note showed the correct balance. He said that Mr. Ferrell examined the title certificate and note and compared the receipts, that Turnage had previously given him, with the credits on the note, and that Mr. Ferrell then told him that this was his

title and note and that it showed the right balance. He said he returned to Ferrell's house in April, at which time Mr. Ferrell said he had heard that Turnage had a note which he hadn't seen and requested that the truck be replevied so that he could get out and get a cheap truck. He said that when the replevin writ was served, and Mr. Ferrell said they didn't have a right to take the car, he (Pickard) explained that the truck was being replevined at his (Ferrell's) request; to which Mr. Ferrell replied that he requested this before he saw the note that Mr. Turnage has.

Before discussing appellants' motion for a directed verdict made in the lower court and determining whether or not the evidence was sufficient to carry the case to the jury, we must first dispose of a contention made in the brief of counsel for appellee. This contention is that, since appellants' motion was captioned "Motion for a New Trial and for Judgment Non Obstante Veredicto", appellants had, in the lower court, made a motion for judgment non obstante veredicto concurrently with a motion for a new trial which would amount to a waiver of the motion for a new trial and leave appellants without any standing in this Court. In support of this contention, counsel for appellee cites and relies on the opinion of this Court in the case of Young v. Spencer, 44 Tenn. App. 83, 312 S. W. (2d) 479. Counsel for appellants questions the authority of that case, as applied to the facts of the instant case, and contends that the same rule should not apply with reference to a motion for a judgment non obstante veredicto as applies with reference to a motion in arrest of judgment. This rule is that the making of such motion, either prior to or simultaneously with making a motion for new trial, results in

a waiver of the motion for a new trial. It will not be necessary for us to decide, in the instant case, whether or not such distinction should be drawn. It is sufficient, for the purposes of the instant case, to hold that although the caption of appellants' motion in the lower court designates it as both a motion for a new trial and one for judgment non obstante veredicto, the body of said motion does not bear out the latter part of such caption. Said motion has been quoted above, in full; and the only parts of said motion which could, in our opinion, refer to the latter part of the caption, are contained in the following language, ''and move the Court to set aside the verdict in this cause'', and the concluding paragraph of said motion, which is, ''Wherefore, said original plaintiffs and cross-defendant moved the Court to set aside the verdict awarded in the trial of this cause and enter a judgment in this favor''. This language, we construe as being merely a request to the court to correct its alleged error of having overruled the motion for a directed verdict made at the conclusion of all of the proof, and to effectuate such correction of the assumed error by entering the judgment which would have been entered if the motion for a directed verdict had been granted. Such practice is entirely proper in Tennessee. Barnes v. Noel, 131 Tenn. 126, 174 S. W. 276; Bostick v. Thomas, 137 Tenn. 99, 191 S. W. 968; Hamburger v. Ill. Cent. R. Co., 138 Tenn. 123, 196 S. W. 144; F. W. Woolworth Co. v. Connors, 142 Tenn. 678, 222 S. W. 1053; Graves v. Union R. Co., 177 Tenn. 699, 152 S. W. (2d) 1026; Hall v. State ex rel. Norman, 10 Tenn. App. 287; Mackie v. Fuqua, 14 Tenn. App. 176.

█ It is true that the order overruling appellants' motion, entered in the lower court, refers to said motion,

both in the caption of the order and in the body of same, as a "Motion for a New Trial and for Judgment Non Obstante Veredicto"; but, as stated above, we hold that the language in the body of said motion, rather than the caption of same, must control. This ruling is in accord with proper practice as set out in 41 Am. Jur.—Pleading, Section 26—page 307, which is as follows:

"All pleadings should bear a proper caption showing the name of the court and county, and sometimes the city, in which the action is brought, the term, the number of the case on the docket or calendar, and the names of the parties to the action. Pleadings also designate their nature, such as complaint, supplemental complaint, answer, reply, and the like; usually there are express provisions declaratory of these requirements. The parties should be described by their full and correct names, if known, and when suit is brought or defended in a representative or fiduciary capacity, that capacity should be indicated in the caption. But pleadings, like decrees and papers on the files of courts, are commonly to be interpreted in accordance with their true character without much regard to their name or title."

On the merits of appellants' assignment of error, we think it must be denied because the evidence referred to above was, in our opinion, sufficient to justify submission of the issues involved for determination by the jury. As stated above, we cannot weigh the evidence nor determine as to the preponderance of same. Even if we were of opinion that the overwhelming preponderance of the evidence was in favor of appellants' contentions, since there was some material evidence to sustain

the jury's verdict, and since the verdict has been approved by the trial judge in his capacity as a thirteenth juror, we are bound by the verdict and must affirm the judgment based thereon. Obviously, if the jury found as a fact that the note held by Demery is a forgery, as it seems to have done, Ferrell was entitled to a judgment in both the replevin suit and his suit to recover $50.

It is contended, however, by counsel for appellants, that even if the note held by C. D. Demery is in fact a forgery, nevertheless, Homer Ferrell should, as a matter of law, be held to be estopped to deny the validity of same and, consequently, for that reason, the motion for a directed verdict should have been granted. In our opinion, this contention is not sound. The question of estoppel, as well as the question of genuineness of the note held by C. D. Demery, was determined by the jury's verdict. The charge of the trial judge to the jury is not copied into the transcript of the record, but the record does show, ''The Court then charged the jury and the jury retired from the court room to deliberate upon its verdict.'' We must, therefore, presume that the charge as given by the trial judge was in all respects a correct charge, and that it did cover the contentions raised by C. D. Demery and Paul Pickard with reference to estoppel, as well as their contentions with reference to the genuineness of the note held by Demery. This presumption is fortified by the circumstance that the transcript of the record before us contains (although without explanation of their presence there) two special requests of appellants, which deal with the question of estoppel and which purport to show over the signature of the trial judge, ''Given in charge''.

■■■ Another contention of appellants is that appellee could not have been, as a matter of law, entitled to a judgment against both C. D. Demery and Paul Pickard as his agent. This is of special significance with reference to the judgment of Homer Ferrell for the $50 claimed to have been improperly paid by him. Numerous authorities are cited in the brief of counsel for appellant in support of this contention. Without questioning the correctness of the rule of law relied on, nor the correctness of the decisions cited as supporting such rule as applied in other cases, or even as applied to the facts of the instant case if a motion had been made in the lower court to require appellee to elect whether he would proceed against the principal or against the agent, we think the rule should not be applied in the instant case. Our reason for so ruling is that, even if it were error for the trial judge to have permitted a judgment in favor of Homer Ferrell against both Paul Pickard as agent, and also against C. D. Demery as principal, such error was invited or induced by appellants themselves. The doctrine that a plaintiff in error will not be permitted to take advantage of errors which he himself committed or invited, or induced the trial court to commit, is settled law in Tennessee. Gentry v. Betty Lou Bakeries, 171 Tenn. 20, 100 S. W. (2d) 230; Bealafelt v. Hicks, 13 Tenn. App. 18; Herstein v. Kemker, 19 Tenn. App. 681, 94 S. W. (2d) 76; Gardner v. Burke, 28 Tenn. App. 119, 187 S. W. (2d) 25. In the instant case, such error was injected into the cause when the present litigation was started by the filing of a replevin suit against Homer Ferrell by Paul Pickard as agent of C. D. Demery. After the replevin suit had been removed by appeal to the Circuit Court, a demurrer, on the ground that the writ of re-

plevin shows on its face that plaintiff, Paul Pickard, is an agent of C. D. Demery and therefore, as such agent, he has no authority to bring a suit in a court of law in his own name, and that the right to possession of the truck involved was not in Pickard, but in C. D. Demery, was overruled when plaintiff moved that he be allowed to amend the replevin writ by adding C. D. Demery as a party plaintiff, which motion was granted. In that situation, we think appellants are not now in a position to complain that the judgment was rendered against both Pickard as agent, and against Demery as principal.

It results that the appellants' assignment of error must be overruled, and the judgments of the Circuit Court in these two consolidated cases will be affirmed. Judgment will be entered here in favor of Homer Ferrell and against Paul Pickard and C. D. Demery for the sum of $50 in the Circuit Court case No. 373, together with interest thereon from May 3, 1958, the date on which the motion for new trial was overruled, and in favor of Homer Ferrell and against Paul Pickard and C. D. Demery for possession of the Dodge pick-up truck which was the subject of litigation in the replevin case No. 331 in the Circuit Court; after which this cause will be remanded to the Circuit Court of Tipton County, Tennessee for enforcement of said judgments and for such further proceedings in said causes as may be necessary or proper and consistent with this opinion.

The costs of this Court and those of the Circuit Court of Tipton County in both of said causes appealed from that Court, will be adjudged against C. D. Demery and Paul Pickard and their sureties on their appeal bond.

Avery, P. J. (Western Section) and Carney, J., concur.